UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO: 1:18-CV-00356-MOC-WCM

| | |
|---|---|
| PAMELA NEIGHBOR and <br> NAOMI QUILLEN, <br><br> Plaintiffs, <br><br> vs. <br><br> JP MORGAN CHASE BANK, N.A. and <br> SETERUS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )     **ORDER** <br> ) <br> ) <br> ) <br> ) <br> ) |

**THIS MATTER** is before the Court on a Partial Motion to Dismiss Amended Complaint (Doc. No. 26), which was filed by Defendant Nationstar Mortgage LLC as successor-in-interest to Seterus, and which Defendant JP Morgan Chase joins in part (Doc. No. 29). For reasons that follow, the Court denies the motion.

**I.      FACTUAL BACKGROUND**

The following facts are taken from Plaintiffs' Amended Complaint and are assumed true for this motion. In June 2005, non-party Dennis Neighbor executed a Promissory Note, by which he agreed to repay a home mortgage loan in the amount of $172,350.00, plus interest. As security, Dennis Neighbor, as well as Plaintiffs Pamela Neighbor and Naomi Quillen, executed a Deed of Trust granting the lender and its successors and assigns a security interest in a home located at 15 Country Road in Hendersonville, North Carolina. (Doc. No. 10 ¶ 7).

Around March 2010, the Country Road home was destroyed by an explosion. (Id. ¶ 9). Before, the home "was in pre-foreclosure," so an "investigation was done to determine the cause

1

of the explosion." (Id. ¶¶ 10–11). Allegedly, the "investigation concluded that Plaintiffs were innocent and were completely clear of any liability for the destruction of the house." (Id. ¶ 12).

After the explosion, Plaintiffs learned that the remaining balance on the mortgage loan was $158,055.00. (Id. ¶ 13). Plaintiffs claim their insurer sent payment for that amount in October 2010 to Diamont & Associates, who forwarded the amount "to Defendant." (Id. ¶ 15). Plaintiffs assert that this payment "satisfied the mortgage debt Plaintiffs owed to Defendant." (Id. ¶ 16).

Despite the supposed payoff, "Defendant initiated [home] foreclosure proceedings" on January 15, 2013. (Id. ¶ 17). Plaintiffs maintain they were "unaware of these proceedings" because "they no longer lived at the property" and believed the mortgage was "satisfied three years prior." (Id. ¶¶ 18–19). Purportedly, "[o]n January 23, 2013, an Order Permitting Foreclosure was filed [with] the Henderson County Clerk of Court" and on September 4, 2015, the home "was sold on the courthouse steps." (Id. ¶¶ 20–21). Then, "[o]n October 29, 2015, a final report and account of Foreclosure Sale was filed with the [clerk] for Plaintiffs' property." (Id ¶ 22).

On October 29, 2018, Plaintiffs filed this lawsuit against Defendant JP Morgan Chase in the Superior Court of Henderson County, North Carolina. (Doc. No. 1). Defendant JP Morgan Chase removed the action to this Court on December 13, 2018. (Id.). On February 26, 2019, Plaintiffs filed an Amended Complaint, which named Seterus as a defendant for the first time. (Doc. No. 10). Plaintiff served Seterus with a summons and a copy of the Amended Complaint on June 10, 2019 by certified mail to Seterus's registered agent. (Doc. No. 27-5).

## II. DISCUSSION

Defendant Nationstar moves to dismiss the Amended Complaint on two grounds. First, Nationstar moves to dismiss the entire complaint for insufficient service of process. See Fed. R. Civ. P. 12(b)(5). Nationstar contends that service was insufficient because Plaintiffs failed to serve

2

it with a summons within 90 days of filing the Amended Complaint. (Doc. No. 27 at 12). Second, Nationstar moves to partially dismiss the Amended Complaint because it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Specifically, Nationstar argues the complaint reveals that Plaintiffs' claims are time-barred. (Doc. No. 27 at 1). Defendant JP Morgan Chase joins the latter contention. (Doc. No. 29). The Court rejects each argument in turn.

### A. Insufficient Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). The purpose of service "is to give notice to the defendant." Scott v. Maryland State Dep't of Labor, 673 F. App'x 299, 304 (4th Cir. 2016) (quoting Karlsson v. Rabinowitz, 318 F.2d 666, 669 (4th Cir. 1963)). As such, "[w]hen the process gives the defendant actual notice of the pendency of the action, [service] rules, in general, are entitled to a liberal construction." Armco v. Penrod-Stauffer Bldg. Sys., 733 F.2d 1087, 1089 (4th Cir. 1984); see also Torres v. Oakland Scavenger Co., 487 U.S. 312, 316 (1988) (noting "'mere technicalities' should not stand in the way of consideration of a case on its merits"). Still, "actual notice" is not the controlling standard. Mining Energy v. Office of Workers' Comp., 391 F.3d 571, 576 (4th Cir. 2004). Service "rules are there to be followed, and plain requirements for the means of effectuating service of process may not be ignored." Armco, 733 F.2d at 1089.

Federal Rule of Civil Procedure 4 sets forth the formal requirements for the issuance of a summons and for service of process in proceedings brought in federal court. Where a defendant alleges a defect in service, the plaintiff bears the burden of demonstrating that the procedure used to perfect service complied with the requirements of Rule 4. See Mann v. Castiel, 681 F.3d 368, 372 (D.C. Cir. 2012); Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

3

Rule 4(m) requires a plaintiff to serve a summons and complaint on each defendant within 90 days of filing a complaint. If a plaintiff fails to timely serve a defendant, the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Where a plaintiff demonstrates "good cause" for failing to timely serve a defendant, the Court "must extend the time for service for an appropriate period." Id. But "even if there is no good cause shown," "[district] courts have been accorded discretion to enlarge" the period for service. Henderson v. United States, 517 U.S. 654, 662 (1996) (quoting Advisory Committee's Notes); see, e.g., Escalante v. Tobar Constr., Inc., No. 8:18-CV-980, 2019 WL 109369, at *3 (D. Md. Jan. 3, 2019).[1]

Courts have identified several non-exhaustive factors that guide the discretionary decision of whether to enlarge the service period. Such factors include "(i) the possibility of prejudice to the defendant, (ii) the length of the delay and its impact on the proceedings, (iii) the reason(s) for the delay and whether the delay was within the plaintiff's control, (iv) whether the plaintiff sought an extension before the deadline, (v) the plaintiff's good faith, (vi) the plaintiff's pro se status, (vii) any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling,

---

[1] Citing Fourth Circuit precedent, Nationstar asserts that a "complaint must be dismissed absent a showing of good cause" for failure to timely serve. Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995) (emphasis added). But after the Supreme Court's decision in Henderson, the Fourth Circuit recognized that district courts have discretion to "extend[] the time for proper service of process," even absent good cause. Scruggs v. Spartanburg Reg'l Med. Ctr., 198 F.3d 237 (4th Cir. 1999) (unpublished); see Giacomo-Tano v. Levine, 199 F.3d 1327 (4th Cir. 1999) (unpublished); see also Escalante, 2019 WL 109369, at *3 (explaining that "Mendez is no longer the controlling authority in the Fourth Circuit"). This reading comports with the plain language of the 2015 revision to Rule 4(m), which states that a Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added); see Robinson v. G D C, Inc., 193 F. Supp. 3d 577, 583 (E.D. Va. 2016); see also, e.g., United States v. Woods, 571 U.S. 31, 45 (2013) (recognizing that the word "or" "is almost always disjunctive" and thus the "words it connects are to 'be given separate meanings'").

4

and (viii) whether time has previously been extended." Robinson, 193 F. Supp. 3d at 580 (citing Kurka v. Iowa Cty., 628 F.3d 953, 959 (8th Cir. 2010); Newby v. Enron, 284 F. App'x. 146, 149–51 (5th Cir. 2008); Carter v. Keystone, 278 F. App'x. 141, 142 (3d Cir. 2008); Melton v. Wiley, 262 F. App'x 921, 924 (11th Cir. 2008); Wright & Miller, Federal Practice & Procedure: § 1137 (2015)); see Scott v. Maryland Dep't of Labor, 673 F. App'x 299, 306 (4th Cir. 2016) (identifying similar factors). The Court addresses the relevant factors in turn.

To begin, this is not a case where Plaintiffs simply "failed to take any action within the prescribed period of time." Bolus v. Fleetwood RV, 308 F.R.D. 152, 157 (M.D.N.C. 2015), aff'd, 646 F. App'x 316 (4th Cir. 2016); see Greenbrier Hotel v. ACE Am. Ins., No. 2:19-CV-00118, 2019 WL 2353372, at *2 (S.D. W. Va. June 3, 2019) (inquiring whether plaintiffs "acted diligently or made reasonable efforts to effectuate service"). Instead, Plaintiffs' counsel represents he made good-faith efforts to timely serve Defendants. Specifically, he provided a summons to his secretary and instructed her to serve it in "early March 2019," which was shortly after the Amended Complaint was filed. (Doc. No. 39 at 5). Although the secretary "verified service was mailed, return service was never delivered," and before she could follow up, "she was hospitalized and never returned to the firm." (Id. at 6). In the meantime, counsel "was out of the office for nearly a month in trial." (Id.). When he returned, he "discovered the deficient service and immediately mailed the summons again." (Id.). Despite counsel's shortcomings, these actions demonstrate a good-faith effort to timely effectuate service. Such efforts countenance enlarging the service period. See Newby, 284 F. App'x at 149–50.

Because of counsel's delay, Nationstar was actually served on June 10, 2019—about two weeks later than the 90-day period. (Doc. No. 27 at 12). In its motion, Nationstar did not assert that it was prejudiced by the two-week delay. In fact, during argument, Nationstar conceded that

5

additional time would not make a "dramatic difference" for its preparation. Again, the lack of prejudice from this minimal delay weighs in favor of enlarging the service period. See, e.g., Escalante, 2019 WL 109369, at *5; Sandhir v. Little, No. 1:17-CV-102, 2018 WL 4144454, at *4 (N.D. W. Va. Aug. 30, 2018); Thackurdeen v. Duke Univ., No. 1:16-CV-1108, 2018 WL 1478131, at *5 (M.D.N.C. Mar. 23, 2018); Robinson, 193 F. Supp. 3d at 580; LHF Prods., Inc. v. Does, No. 3:16-CV-284, 2016 WL 7423094, at *6 (E.D. Va. Dec. 22, 2016).

Finally, while not dispositive, the Court also notes that a dismissal here would likely bar Plaintiffs from refiling their aging claims. In fact, Nationstar argues that most of Plaintiffs' claims are already time-barred. See infra Part II.B. As the Supreme Court recognized, "the rules of procedure should be liberally construed [so] that 'mere technicalities' [do] not stand in the way of consideration of a case on its merits." Torres, 487 U.S. at 316. Plaintiffs' consequent prejudice thus counsels in favor of enlarging the service time. See, e.g., Scott, 673 F. App'x at 306; Melton, 262 F. App'x at 923; Escalante, 2019 WL 109369, at *5; Sandhir, 2018 WL 4144454, at *4.

Accordingly, after considering relevant factors, this Court will exercise it discretion and enlarge the time for service through June 10, 2019—the date when Plaintiffs served Nationstar.[2]

### B.  Statute of Limitations

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. See In re Birmingham, 846 F.3d 88, 92 (4th Cir.), as amended (Jan. 20, 2017), cert. denied, 138 S. Ct. 468 (2017). To survive such a motion, a complaint must contain

---

[2] For the foregoing reasons, the Court would also enlarge the service time even if Plaintiffs were required to demonstrate good cause or excusable neglect for an extension. See, e.g., Hansan v. Fairfax Cty. Sch. Bd., 405 F. App'x 793, 794 (4th Cir. 2010) (noting that plaintiff "was unable to establish good cause or excusable neglect" for failing to effectuate proper service). As the Fourth Circuit has held, district courts are afforded broad discretion to determine whether there is good cause or excusable neglect warranting an extension. Id. Both requirements are satisfied here.

6

sufficient factual allegations "to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

When ruling on a motion to dismiss, the Court considers "the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted). The Court "must accept as true all of the factual allegations contained in the complaint" and draw "all reasonable inferences" in favor of the non-movant. Id. Even so, factual allegations are insufficient if they rely on "naked assertions" and "unadorned conclusory allegations" that are "devoid of factual enhancement." In re Birmingham, 846 F.3d at 92. And "the Court is not obliged to assume the veracity of the legal conclusions drawn from the facts alleged." Id.

Because 12(b)(6) motions test the sufficiency of a complaint, those motions "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, 494 F.3d 458, 464 (4th Cir. 2007). This is because affirmative defenses "must be raised by the defendant . . ., and the burden of establishing [an] affirmative defense rests [with] the defendant." Id. As such, courts only reach the merits of an affirmative defense "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense . . . 'clearly appear on the face of the complaint.'" Id. (citation and alterations omitted).

In Goodman v. Praxair, a plaintiff sued for breach of contract under Maryland law. Id. at 465. Under state law, such an action accrued "on the date of breach," or when "plaintiff learned or should have learned of the breach." Id. Although the plaintiff's complaint described the breach, it failed to identify the breach date or when the plaintiff discovered the breach. Id at 464. The defendants asserted this failure warranted dismissal, but the Fourth Circuit disagreed. The Court

7

explained that such a rule "would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." Id. at 466. Such a requirement is contrary to the traditional rule that "[o]nce a claim has been stated adequately, it may be supported by showing <u>any set of facts</u> consistent with the allegations in the complaint." Id. (quoting Twombly, 550 U.S. at 563 (2007) (emphasis in original)).

Here, Nationstar's contention is almost identical to the defendants' in Goodman. According to Nationstar, the Amended Complaint shows that most of Plaintiffs' claims—wrongful forfeiture, slander of title, conversion, unjust enrichment, and intentional infliction of emotional distress—are time-barred, as Plaintiffs undisputedly "asserted [them] more than three years after the foreclosure of the [home] was finalized." (Doc. No. 27 at 6).[3] Nationstar acknowledges that the limitations period for a wrongful foreclosure claim runs from the date that Plaintiffs "discovered facts about the transaction which would constitute fraud." (Id.). Still, Nationstar asserts that Plaintiffs had the "burden to allege . . . when or how they discovered the foreclosure sale." (Id. at 7; Doc. No. 42 at 2). Nationstar is incorrect. As Goodman explains, Plaintiffs are not required to plead facts that are responsive to an affirmative defense that has not yet been raised. See 494 F.3d at 466.

Nationstar nonetheless argues that the Court should dismiss Plaintiffs' other claims because the discovery rule does not extend to claims for slander of title, conversion, unjust enrichment, or intentional infliction of emotional distress. (Doc. No. 42 at 4). Even assuming Nationstar is

---

[3] Plaintiffs also seek punitive damages and a constructive trust or equitable lien on the property. (Doc. No. 10 ¶¶ 31–34, 87–90). As Nationstar correctly recognizes, these remedies are not free-standing causes of action and thus cannot be premised on time-barred claims. See Hawkins v. Hawkins, 400 S.E.2d 472, 475 (N.C. Ct. App. 1991) (explaining punitive damages requires a plaintiff to "establish[] a cause of action" and "aggravating circumstances"), aff'd, 417 S.E.2d 447 (N.C. 1992); New Amsterdam Cas. v. Waller, 301 F.2d 839, 842 (4th Cir. 1962) (recognizing that a constructive trust is not a freestanding cause of action).

correct, "[c]ourts applying North Carolina law have recognized that equitable tolling is available to extend limitations periods." Jones v. Farms, No. 4:16-CV-49-BO, 2016 WL 4696417, at *2 (E.D.N.C. Sept. 6, 2016); see Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc., 932 F.3d 268, 278 n.5 (4th Cir. 2019); Aikens v. Ingram, 524 F. App'x 873, 882 (4th Cir. 2013) (holding equitable tolling is "consistent with [North Carolina]'s jurisprudence"); Allen v. Anderson, No. 5:13-CT-3238-FL, 2016 WL 3573878, at *6 (E.D.N.C. June 23, 2016); McCollum v. Snead, No. 5:15-CV-451-BO, 2016 WL 3064081, at *2 (E.D.N.C. May 27, 2016); Greene v. Durham Cty. Police Dep't, No. 1:13-CV-452, 2014 WL 12029365, at *1 (M.D.N.C. Mar. 26, 2014).

Equitable tolling does "not extend to garden variety claims of excusable neglect." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003). Rather, a plaintiff "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Id. Before applying equitable tolling, courts also inquire "whether defendant received timely notice of plaintiff's claim, whether defendant has been prejudiced by the delay of the litigation, and whether plaintiff acted with diligence in pursing his claim." Jones, 2016 WL 4696417, at *2 (citing Aikens, 524 F. App'x at 882).

Plaintiffs assert they were "unaware" that "the [foreclosure] process was taking place" because they were "rendered homeless" by the blast. (Doc. No. 39 at 4). Moreover, they argue that they believed "they had no reason to be concerned about foreclosure because [their insurer] had satisfied the mortgage debt in full in 2010." (Id.). After discovery, the Court may learn that these circumstances are insufficient to satisfy the strictures of equitable tolling. But again, the facts on the face of the complaint are insufficient to assess these claims through a motion to dismiss. Accordingly, the Court will deny the motion to dismiss Plaintiffs' claims as time-barred.

### III. CONCLUSION

For the foregoing reasons, Nationstar's motion to dismiss for insufficient service of process and for failure to state a claim upon which relief can be granted is denied.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Nationstar's Partial Motion to Dismiss Amended Complaint (Doc. No. 26), which Defendant JP Morgan Chase joins in part (Doc. No. 29), is **DENIED.**

Signed: October 25, 2019

Max O. Cogburn Jr.
United States District Judge